[Civ. No. 2766. Third Appellate District.—June 20, 1924.]

## J. R. BURKS, Respondent, v. F. A. WEAST, Appellant.

[1] PLEADING—AMENDMENT OF COMPLAINT WITHOUT LEAVE OF COURT —ABSENCE OF PREJUDICE.—In this action to recover a balance due for goods, wares, and merchandise sold and delivered, the error, if any, in denying defendant's motion to strike out plaintiff's amended complaint, which motion was predicated upon the fact that such amended complaint was filed without leave of court first had and obtained after the court has overruled defendant's demurrer to plaintiff's original complaint, did not warrant or authorize a reversal of the judgment subsequently rendered in favor of plaintiff, where the amended complaint was served and filed a sufficient length of time preceding the trial to enable defendant to make a full and complete defense, if any he had, and there was nothing in the record to show that defendant was in anywise injured by the action of the court in denying his motion.

[2] CORPORATIONS—FORFEITURE OF CHARTER—VOID JUDGMENT—SUBSEQUENT ACTION AGAINST DIRECTORS.—A judgment obtained against a corporation after it has forfeited its charter and ceased to exist as a corporation, by reason of its failure to pay the annual state franchise tax, is a nullity; and such judgment is not a bar to a subsequent action against the directors or persons purporting to transact business under the name of such corporation after its corporate existence terminated.

[3] VOLUNTARY ASSOCIATIONS—LIABILITY OF MEMBERS—EXTENSION OF CREDIT.—Where persons, without any formality whatever and without any agreement as to assumption of liability, proceed to conduct

1. See 21 R. C. L. 572.
2. See 7 Cal. Jur. 138; 7 R. C. L. 739.
3. See 3 Cal. Jur. 351.

a restaurant and place of business under the name of a corporation which has forfeited its charter and ceased to exist, they severally become liable to creditors for such obligations as might be incurred by the manager selected by them in the purchase of supplies wherewith to conduct the business they have undertaken; and this is true even though the parties selling and delivering the supplies give credit in the name under which the business is being conducted.

[4] Interest — Usury Law—Demand.—The beginning of suit to recover a balance due for goods, wares, and merchandise sold and delivered constitutes a demand for payment; and, under the usury law, interest on such an account runs from the date of demand, and it is error to allow interest from a date earlier than the commencement of suit, in the absence of proof of an earlier demand.

(1) 4 C. J., p. 939, sec. 2914. (2) 34 C. J., p. 768, sec. 1183. (3) 5 C. J., p. 1362, sec. 93, p. 1363, sec. 97. (4) 33 C. J., p. 236, sec. 129.

APPEAL from a judgment of the Superior Court of Stanislaus County. E. N. Rector, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

Leslie K. Floyd and E. H. Zion for Appellant.

J. M. Walthall and Edward T. Taylor, Jr., for Respondent.

PLUMMER, J.—The plaintiff's cause of action is based upon an assigned claim of the Modesto Package Company against the defendant for the sum of $1,521.79 alleged to be the balance due for goods, wares, and merchandise sold and delivered to the Modesto Coffee Club during the year 1920. Plaintiff had judgment and the defendant appeals.

The cause of action is set forth in an amended complaint containing two counts in which it is alleged that L. C. Black, doing business under the fictitious name of Modesto Package Company, sold and delivered to the defendant, operating under the name of the Modesto Coffee Club, goods, wares, and merchandise of the value of the sum above stated. The assignment of the claim by the Modesto Package Company

4. See 14 Cal. Jur. 677; 15 R. C. L. 28.

to the plaintiff is properly set forth in the amended complaint.

[1] In the original complaint filed by the plaintiff it is alleged that the plaintiffs operating under the name of the Modesto Package Company sold goods, wares, and merchandise to the defendant in the sum of $1,521.79. After a demurrer had been interposed to this complaint and overruled, the plaintiff filed an amended complaint setting forth his cause of action, as hereinabove stated, and correcting his complaint so as to conform with the actual facts of the transaction. This amended complaint was filed without leave of the court first had and obtained. Thereupon the defendant moved the court to strike said amended complaint from the files in the said action. This motion was denied and such ruling is assigned by the appellant as his first ground for a reversal herein. The record shows that the defendant had notice of the real cause of action. There is nothing in the record to show that the defendant was in anywise injured by the action of the court. The amended complaint was filed a sufficient length of time preceding the trial to enable the defendant to make a full and complete defense, if any he had. The defendant was served with the amended complaint on the twenty-second day of September, 1922. The cause of action did not come on for trial until the tenth day of November, 1922, thus showing that the defendant had ample opportunity to meet all the issues tendered by the amended complaint. It may be further stated that no attempt was made by the defendant in the trial court to set forth other than mere technical objections to the amended complaint, and the chief objection now is that it was filed without notice, and while, apparently, the amended complaint seems to state a different cause of action, in truth and in fact, the record shows that such was not the case. Under such circumstances, we think that the ruling of the supreme court in the case of *Baker* v. *Southern Cal. R. Co.*, 114 Cal. 501 [46 Pac. 604], is applicable. It is there stated: ''If it appears by the record that the motion for leave to file amended complaint should have been granted, defendants are not prejudiced by failure of plaintiffs to give notice.'' We also think that section 475 of the Code of Civil Procedure is determinative of this question. That section sets forth, in substance, that ''The court must, in every stage

of an action, disregard any error, . . . or defect, in the pleadings or proceedings which, in the opinion of said court, does not affect the substantial rights of the parties.'' An examination of the record shows that the rulings of the court, even if admitted to be error, did not result in a miscarriage of justice, and, therefore, does not authorize or warrant a reversal of the judgment. (See sec. 4½ of art. VI of the state constitution.)

It appears from the transcript in this case that some time during the year 1909 a number of citizens, residents of the city of Modesto, organized a corporation, named the Modesto Coffee Club, for the purpose of establishing, maintaining, and operating restaurants, coffee clubs, lunch places, reading-rooms, and other places of recreation where refreshments may be served and people allowed to congregate, etc. This corporation began business in the city of Modesto and continued to operate as such, and continued to function as a corporation, until some time during the month of March, 1915, when, by reason of failure of said corporation to pay the franchise tax levied against it by the act, approved on April 1, 1911 (Stats. 1911, p. 530), said corporation forfeited its charter and ceased to exist as a legal entity. It also further appears from the transcript that pursuant to a notice, by way of advertisement to all people interested in the coffee club, a meeting was had at which the defendant and six others were elected directors of the Modesto Coffee Club. The date of this election is not definitely fixed, but appears to have been at some time in 1918. The board so elected proceeded to employ one Mrs. Walters as manager of the coffee club, and thereafter proceeded to conduct a restaurant, reading-room, and place where people might congregate under the name of the Modesto Coffee Club, and continued to do so during the times mentioned in plaintiff's complaint, and in the conduct of said business the said Walters, who had been employed by the defendant and the six other persons constituting the so-called board of directors bought the goods, wares, and merchandise constituting the cause of complaint in this action, and used said supplies in the conduct and management of the business of said coffee club. The defendant in this action acted as president of the board of directors and appears to have taken the most active part in the management of the business of said coffee

club, so far as the board of directors was concerned.     A portion of the time-checks were issued by the coffee club signed only by the manager, and a portion of the time the checks issued by the coffee club were countersigned by the defendant, as president thereof.   The business of the club did not prove to be self-supporting and various suits were begun to collect the amounts due for supplies furnished thereto.

[2]   It appears from the transcript that the plaintiff in this action first sued the Modesto Coffee Club as a corpora-' tion and obtained judgment by default for the identical sum sued for in this action, and it is now claimed by the appellant that that judgment is a bar to this proceeding.   The record, however, shows that the action was not begun until long after the Modesto Coffee Club had ceased to exist as a corporation and, therefore, the judgment obtained against it by' default was simply a nullity, or, as stated in the case of *California Nat. Supply Co.* v. *Flack,* 183 Cal. 124 [190 Pac. 634], ''A judgment obtained against a corporation in an action on a promissory note after the corporation has failed to pay its taxes is not a bar to a subsequent action against the directors as trustees, since such nonpayment *ipso facto* terminates the corporate existence.   A judgment rendered against a defunct corporation in an action brought after the forfeiture of its charter is void.''   This case cites a number of other cases in which the same points were involved and where the same holding was had.   This effectually disposes of appellant's contention relative to the judgment had against the Modesto Coffee Club as a corporation.   After the discovery by the plaintiff of the noncorporate existence of the Modesto Coffee Club the present action was instituted against the defendant to obtain judgment against him upon his personal liability for the goods, wares, and merchandise sold and delivered to him, and to his so-called codirectors doing business under the name of the Modesto Coffee Club. In this behalf it is insisted on the part of the appellant that the goods were sold to the Modesto Coffee Club and not to the defendant.

[3]   It does not appear from the transcript that the defendant and the others with whom he was associated entered into any agreement or contract between themselves relative to the business they were about to conduct, but that they

simply proceeded and continued to conduct a restaurant and place of business under the name of the Modesto Coffee Club without any formality whatsoever. This, we think, places them in a position and subjects them to the liabilities of a voluntary association irrespective of whatever name they may assume in the conduct of their business or whether the business is conducted without formally assuming any name. Nor does it matter whether they agreed to or intended to become liable for the costs and expenses of maintaining the club in question. When they assumed to conduct a club and manage it, under the name above designated, we think they severally became liable to creditors for such obligations as might be incurred by the manager selected by them in the purchase of supplies wherewith to conduct the business they had undertaken, and this is true even though · the parties selling and delivering the supplies gave credit to the name of the association under which the business was being conducted.

This very question has been decided in a number of cases. In *Bennett* v. *Lathrop*, 71 Conn. 613 [71 Am. St. Rep. 222, 42 Atl. 634], the supreme court of Connecticut holds: ''The members of a voluntary association are individually liable for an indebtedness incurred in the business for which it was organized, . . . although they did not agree to become, nor did they hold themselves out as partners, or as personally responsible and although the creditors gave credit to the associate name.''

In *Nolan* v. *McNamee*, 82 Wash. 585 [144 Pac. 904], the supreme court of Washington holds that: ''The liability of the members of an association is joint and several, and each member is individually liable for all the debts of the association.''

In 5 C. J. 1362, the question of liability is thus stated: ''While as between the members of an unincorporated association, each is bound to pay only his numerical proportion of the indebtedness of the concern, yet, as against the creditors, each member is individually liable for the entire debt, provided, of course, the debt is of such a nature and has been so contracted as to be binding on the associates as a whole.'' Further on it is stated: ''An unincorporated association organized for business or profit is in legal effect a mere partnership so far as the liability of its members to

third persons is concerned; and accordingly each member is individually liable as a partner for a debt contracted by the association. . . . This liability for the debts of the association is imposed on each member by law. It arises out of his membership as a necessary incident thereto. It does not depend upon any stipulation in the laws of the society making him thus liable, upon his assent to the contract out of which the debt arises; nor is it necessary that the member should have held himself out as a partner, or that the credit should have been extended to him rather than to the association. But, on the contrary, by becoming a member, he subjects himself to liability for all debts contracted by the association within the scope of its object and during the period of his membership.'' (See, also, 3 Cal. Jur. 348.)

In *Leake* v. *City of Venice,* 50 Cal. App. 462 [195 Pac. 440, 441], the court approved the rule just stated, and on page 465 of the report cited states the law as follows: ''Each member of an association is liable for the debts thereof incurred during his period of membership, and which have been necessarily contracted for the purpose of carrying out the objects for which the association was formed.'' The court also approved of the statement of the law that, where parties are associated and conduct business as an unincorporated association, they are regarded as partners, so far as affects the question of liability for the debts necessarily incurred by the association.

In the case of *Webster* v. *San Joaquin Fruit etc. Assn.,* 32 Cal. App. 264 [162 Pac. 654], this court had an occasion to pass upon the questions herein involved, and it was there said, in substance, as follows: As against creditors, each member of such an association was individually liable for the entire debt, if the debt were contracted in the course of the business of the association, and, also, that such an association organized for business or profit was in legal effect a mere partnership, so far as liability to third persons was concerned. In that case the defendants, members of the association, were held liable for goods, wares, and merchandise issued to the association during the course of its business. There is no question in the case at bar but that the goods, wares, and supplies furnished by the assignor of the plaintiff were such as were necessary for the conduct of the business of the Modesto Coffee Club and were purchased by the

person employed by the defendant and his coassociates to manage the business of said club. The fact that the defendant and his coassociates did not expect to reap any personal profit out of the enterprise in which they were engaged does not in anywise affect their liability. They were engaged in business and had appointed a manager to conduct that business for them, and, to a greater or less extent, exercised supervision over the business being conducted under the name of the Modesto Coffee Club, and in so doing, under the authorities which we have cited, rendered themselves individually liable for all supplies necessarily purchased in the conduct of the business in which they were engaged. [4] We agree with the appellant that the court erred in the allowance of interest. It appears by computation that interest was allowed from the date of the last item of goods delivered by the assignor of the plaintiff. In so doing we think the court accepted the wrong date for beginning the allowance of interest.

On November 5, 1918, the electors of this state ratified and approved what is commonly known as the usury law (see Stats. 1919, p. lxxxiii). Section 1 of that initiative measure reads as follows: "The rate of interest upon the loan or forbearance of any money, goods or things in action or on accounts after demand or judgments rendered in any court of this state, shall be seven dollars upon the one hundred dollars for one year. . . ." No demand is shown to have been made for the amount claimed by the plaintiff until the beginning of suit. It has been frequently held that the beginning of suit constitutes a demand. This action was begun on February 20, 1922. By correcting the computation and taking this date as the period from when interest should be allowed, we find that the judgment allowed the plaintiff was $165.40 in excess of what it should be. It is therefore ordered, first, that the judgment herein be and the same is hereby modified by deducting therefrom the sum of $165.40; second, that in all other respects the judgment of the trial court be and the same is hereby affirmed. It is further ordered that the appellant be allowed his costs on appeal.

Burroughs, J., *pro tem.*, and Finch, P. J., concurred.