[Civ. No. 4312.   Third Appellate District.—November 24, 1931.]

E. A. PARKFORD et al., Appellants, v. UNION DRILLING & PETROLEUM COMPANY (a Corporation) et al., Respondents.

Abraham & Sadicoff, Robert N. Pease and Roy P. Dolley for Appellants.

Newby & Newby and Dee Holder for Respondents.

THOMPSON (R. L.), J.—This is an appeal from a judgment which was rendered in a suit for declaratory relief under the provisions of section 1060 of the Code of Civil Procedure, involving the construction of an oil-well contract, with which proceeding another action for materials furnished to the defendants for the drilling of the well, was consolidated.

The plaintiffs are the owners of an oil lease on lots 25 and 26 of Manila Avenue Tract in the county of Los Angeles, according to the map thereof which is recorded in book 5, page 160, of the maps of said county. On April 27, 1927, the plaintiffs executed a written agreement with Hammond and Cragen to drill an oil-well on that property. This contract was subsequently assigned by the last-mentioned parties to the defendants. Pursuant to the terms of this agreement the oil-well was drilled on the premises above described. When the well reached a depth of 4,800 feet a controversy arose regarding the cost of sinking it to a lower point. An oral agreement was thereupon made between these parties to continue the sinking of the well to an approximate depth of 5,500 feet, the additional cost of which was to be equally divided between the contracting parties. The well was thereupon drilled to a depth of 5,517 feet, at the additional expense of $19,238.06. At this depth the well produced oil in commercial quantity. By the terms of the contract the defendants agreed to drill the well "to the oil sand from which the nearest wells are now producing, which sand is located at an approximate depth of . . . 4700 feet". In consideration for sinking this well to the approximate depth of 4,700 feet, the plaintiffs agreed to and did pay the defendants the sum of $20,000. The plaintiffs also agreed to, and did, furnish approximately 4,800 feet of water casing of the agreed value of $9,218.34, together with certain other necessary supplies of the additional value of $1986.15.

The contract for drilling the well also operates as an assignment to Hammond and Cragen of an undivided forty

per cent of the gross product of oil and gas to be secured from the well, subject to certain specified royalties and also subject to a charge of one-half the cost of operating the well after it has been placed on production. The contract provides in that regard: "In addition to the aforesaid cash payment of $20,000.00, and the furnishing of casing as aforesaid, first parties agree that they will, and they do hereby, assign to second parties forty per cent (40%) of the gross production of oil and gas from said well, subject, however, to the payment of one-half of the cost of operating said well after it is placed upon production. . . . " Hammond and Cragen subsequently sold and assigned thirty-five per cent of their undivided interest in the gross production of the oil and gas of this well to the defendants Kenny and McCaslin. June 8, 1927, the defendants Kenny and McCaslin thus acquired by assignment thirty-five per cent of the gross products of oil and gas which should be produced from the well. September 1, 1927, the defendants assigned to the plaintiff Parkford fifteen per cent of the gross products of oil and gas which should be produced from the well, as security for the repayment to him of "the full purchase price of a string of four inch drill pipe and tool joints amounting to . . . $9,218.34, within six months from the date hereof, together with interest thereon at the rate of seven per cent per annum from date until paid".

Subsequent to the execution of the original contract for drilling the well, the defendants executed a chattel mortgage on the well-drilling equipment to secure "each and every obligation and the payment . . . of all sums to be paid by them under and pursuant to a contract" for the drilling of the well.

The trial court adopted findings in accordance with the foregoing statement of facts and entered judgment accordingly, except that the amount which was allowed to the plaintiffs for the casing and supplies furnished by them, is to be satisfied only from the proceeds of the oil and gas which may be secured from the well, and that no interest upon that sum was allowed. From this judgment the plaintiffs have appealed.

█ The appellants contend that the agreement of April 27, 1927, requires the defendants, in consideration of the

payment of said sum of $20,000, to sink the well to the oil-producing sand, which proved to be 5,517 feet below the surface regardless of the estimated depth specified in the contract; that the plaintiffs were therefore not required to participate in the additional expense of drilling below the 4,800-foot level; that the allowance which was made to the plaintiffs in payment for casing and supplies furnished by them should not have required its satisfaction from the proceeds of the oil and gas produced, and that seven per cent interest on this amount should have been allowed, as provided by the terms of the contract.

There is no merit in appellants' contention that the written agreement required the defendants to drill the well below the approximate depth of 4,700 feet, without compensation other than the original payment of $20,000 specified in the contract and the undivided share of the proceeds derived from the gross output of oil and gas, which was assigned by the terms thereof. The language of this agreement clearly indicates that the parties did not originally contemplate the necessity of sinking the well deeper than 4,800 feet. That document does provide that the defendant shall drill the well "to the oil sand from which the nearest wells are now producing". Oral evidence corroborates the fact that the parties did not assume it would be necessary to sink the well below a depth of 4,500 feet or at most, not to exceed 4,700 feet in depth. The plaintiff Parkford testified: "At the time the lease was executed the general understanding was that we had to go to a depth of about 4500 feet. We knew a long time previous that it was probable that oil might be produced at a lower depth than 4,700 feet." Earl Kenny, one of the defendants, testified: "In April, 1927, I did not know of any depth that oil had been produced below 4,700 feet."

Moreover, the language of the contract is unambiguous regarding this subject of the anticipated maximum depth of the well. It is therefore not susceptible of explanation by means of oral testimony. The contract specifically provides that the defendants "shall drill said well to the oil sand, . . . *which sand is located at an approximate depth of 4700 feet*". The parties therefore definitely located the anticipated depth of the oil sand at 4,700 feet. The original intention of the parties regarding the proposed approximate

depth of the well is clear and explicit. In view of this language there is no room for controversy. There is no ambiguity which will admit of oral explanation. The only language contained in this document which may be construed indirectly to support a contention that the parties anticipated the necessity of drilling the well to a maximum depth below 4,700 feet is the provision that the plaintiffs "agree to furnish approximately 4800 feet of new 8¼" heavy casing for use as the water string in said well".

The court found that the defendants were not required to sink the well below a depth of 4,800 feet. The terms of the contract are so explicit in this regard we are unable to perceive how the court could have reasonably construed it otherwise. Certainly there is ample evidence to support this construction of the document. It is in accordance with the evident intention of the parties. It would be unreasonable to hold that the drilling of an oil-well to the designated depth of "approximately 4700 feet", for a specified compensation of $20,000, would require one to continue for a further depth of 817 feet, or until oil sand should be discovered, regardless of the depth.

It is affirmatively alleged by the defendants that when the well reached a depth of 4,800 feet it was agreed between the parties hereto that the defendants would continue operations and drill the well to an approximate depth of 5,500 feet, and that the respective parties would contribute equal amounts to the payment of the additional expense therefor. The court found this agreement was made as alleged. It was also found that the reasonable value of the services of the defendants in drilling this additional 817 feet, is the sum of $19,238.06; that one-half of this amount, to wit, the sum of $9,619.03, is due and owing from plaintiffs as compensation therefor. This sum was subsequently reduced by consent of the parties to $8,050. The reasonableness of this sum is not disputed. The terms of this subsequent agreement find ample support in the evidence. Both Mr. Kenny and Mr. McCaslin testified that on August 20th, when they had reached a depth of 4,800 feet, they interviewed Mr. Parkford, who represented the plaintiffs, and that an agreement was finally reached authorizing the drilling of the well to a maximum depth of approximately 5,500 feet and that the additional cost there-

for would be equally divided between the respective parties to the contract. The ultimate depth of the well is 5,517 feet. This is within the contemplation of the parties pursuant to the terms of the oral agreement.

The extension of the oil-well 817 feet below the original anticipated depth which was specified in the written agreement, is in the nature of extra services which were performed by the contractors. These services having been performed with the knowledge and acquiescence of the owners of the property, created an obligation which entitles the defendants to reasonable compensation therefor. ▮ Where the terms of the original agreement are entirely fulfilled, and additional work is performed pursuant to a subsequent oral agreement, or merely with the knowledge and acquiescence of the owner, the contractor is entitled to reasonable compensation therefor. (27 Cal. Jur. 209, sec. 15; 9 C. J. 840, sec. 180.)

In rendering judgment in these consolidated cases the following items were allowed in favor of the respective parties:

Amounts allowed to the plaintiffs:

| | |
|---|---:|
| For 4" drill pipe and tool joints | $ 9,218.34 |
| For well drilling supplies | 1,986.15 |
| Balance for 8¼" heavy casing supplied | 514.63 |

| | |
|---|---:|
| Total amount allowed plaintiffs | $11,719.12 |

Amount allowed to the defendants:

| | | |
|---|---:|---:|
| For drilling well below the 4800 foot level | $ 8,050.00 | 8,050.00 |

| | |
|---|---:|
| Balance due plaintiffs | $ 3,669.12 |

The defendants assigned to plaintiffs an undivided fifteen per cent of the gross production of oil and gas obtained from the well, as security for the payment of the four-inch drill pipe, of the value of $9,218.34, together with seven per cent interest thereon from September 1, 1927.

The court rendered judgment for the plaintiffs in the sum of $3,669.12, and provided that this sum shall be paid from the fifteen per cent interest in the gross production of oil and gas derived from the well, pursuant to the terms

of the assignment above mentioned. Interest upon no sums which were found to be due was included in the judgment.

The appellants contend that the payment of the item of $514.63 which was allowed to them as a balance due for 8¼-inch heavy casing supplied should have been declared to be secured by the chattel mortgage, and that interest upon that sum should have been allowed from September 1, 1927.

The issues which were raised by the pleadings include no demand for the payment of interest on this claim for compensation for a balance due plaintiffs for 8¼-inch casing. The complaint fails to allege that interest was due or payable. The prayer of the complaint merely asks for a decree "determining and declaring the respective rights and duties of the parties". Ordinarily, interest may be allowed only upon proper pleadings and proof thereof. (*Miller* v. *Murphy,* 88 Cal. App. 601, 606 [263 Pac. 1031]; *American-Hawaiian etc. Co.* v. *Butler,* 17 Cal. App. 764 [121 Pac. 709]; 14 Standard Ency. of Proc., 121, subd. c; 33 C. J. 257, secs. 188 and 196.) The appellants, however, contend that because their action was primarily a suit for declaratory relief, it was, therefore, unnecessary to plead or prove their claim to interest. A construction of the contract which is involved indicates this item for compensation for 8¼-inch casing supplied was an unliquidated claim, and that it bears no interest. Paragraph 12 of the contract, upon which the validity of this item depends, provides that the owners shall supply approximately 4800 feet of 8¼-inch casing, at a cost of about $10,000, but "if the cost of such casing is more than $10,000, then second parties shall pay the cost thereof in excess of $10,000". The contract does not provide for interest on the money paid for such casing. The court found that plaintiffs had exceeded the estimated cost of such casing, and were entitled to the further sum of $514.63 on that account. This was an unliquidated claim. It required an accounting to ascertain that plaintiffs were entitled to any further sum therefor. The amount of casing furnished and the cost thereof had to be determined before the liability accrued. An unbroken line of authorities in California holds that an unliquidated claim does not bear interest. In *Cox* v. *McLaughlin,* 76

Cal. 60, 67 [9 Am. St. Rep. 164, 18 Pac. 100, 103], it is said:

"It may be stated, as a general principle, that interest is not allowed on unliquidated damages or demands. This term 'unliquidated damages' applies equally to cases . . . upon a *quantum meruit*, for goods sold and delivered or services rendered."

It is true that the payment of said item of $514.63 should have been declared to be secured by the chattel mortgage which was included in plaintiffs' application for declaratory relief and pleaded as exhibit "D" attached to the complaint. That mortgage was executed "as security for the performance . . . of each and every obligation and the payment . . . of all sums to be paid . . . under and pursuant to the contract". The judgment should be modified to so declare.

The appellants claim the court should have allowed them seven per cent interest on the sum of $1986.15 in compensation for well-drilling supplies furnished. This claim is also unliquidated. What this court has said regarding the preceding demand for interest on the item of $514.63 is also applicable to this claim. The court properly disallowed interest on this sum.

It is also asserted this last amount of $1986.15, which was allowed plaintiffs for well-drilling supplies, was entirely independent of the original contract, and that the court therefore erred in declaring that it should be paid only from the receipts secured from the fifteen per cent interest in the gross production of oil and gas, which was assigned to the plaintiffs as heretofore mentioned. It sufficiently appears, however, that these supplies were furnished incident to the well-drilling contract, and that the court properly directed that this sum should be paid from the proceeds derived from the assigned interest of fifteen per cent of the gross production of oil and gas.

Finally, the appellants contend that the court should have allowed them seven per cent interest on the sum of $9,218.34, which was found to be due for 4-inch drill pipe and tool joints. The court found that this string of pipe and tool joints was furnished defendants at "the agreed and fixed value of . . . $9,218.34". This claim, therefore, was not unliquidated, but upon the contrary was fixed and

determined. The complaint for declaratory relief asked that the assignment, which was attached thereto as exhibit "E" should be construed to ascertain and declare "the respective rights" thereunder. This assignment shows upon its face that plaintiffs were entitled to seven per cent interest on said specified sum of $9,218.34 from the date of the assignment, which is September 1, 1927. Under such circumstances it was unnecessary to specifically plead the demand for interest. The item of interest is included in the general demand to ascertain and declare the rights of the plaintiffs. The interest on this sum to the date of the judgment, which is eight months and two days, amounts to $433.77. The judgment should be modified to credit the plaintiffs with this additional sum.

The judgment is accordingly modified by allowing the plaintiffs the additional sum of $433.77, and by declaring that the chattel mortgage, which is attached to the complaint as exhibit "D", is security for the payment of the various sums found to be due the plaintiffs. With these modifications, the judgment is affirmed, respective parties to pay their own costs.

Preston, P. J., and Plummer, J., concurred.