[Civ. No. 5086. Third Appellate District.—March 19, 1934.]

JOSEPHINE P. COOK, Respondent, v. WESTERN TRUST AND SAVINGS BANK (a Corporation), Appellant.

Clock, McWhinney & Clock for Appellant.

J. Edward Johnson for Respondent.

PLUMMER, J.—This action was begun by the plaintiff to recover of and from the defendant certain moneys received by the defendant from the Shell Oil Company, royalties belonging to the plaintiff by reason of her ownership in and to certain premises or units in and to certain premises operated by the Shell Oil Company in the extraction of oil and other hydrocarbon products. The entire tract of land included 20 acres. It appears from the record, however, that the plaintiff's interest related only to a certain 5 acres thereof, being 1095/2500ths part of the

5 acres. The land originally belonged to a man by the name of Coseboom. Coseboom had made a contract with Walter H. Cook for the purchase of an interest in said 5-acre tract and in the royalty of the oils produced therefrom, the agreement with Cook providing that the deeds from Coseboom should go directly to those who should purchase from Cook. The record shows that on April 3, 1923, Cook transferred his interest in the lands, rents and royalties referred to herein to his mother and father. On the sixth day of April, 1923, an attachment was issued against Walter H. Cook, garnishment process was served upon the defendant herein, to which the defendant replied, "This bank· has no funds or personal property in hand belonging to Walter H. Cook. He has a prospective interest in and to a certain contract for real estate not yet available." No attachment was levied upon the real estate or upon the interest or alleged interest of Walter H. Cook, in or to the same, or to any products, rents or royalties to be derived therefrom.

On June 21, 1923, by a written instrument, the plaintiff became the owner of the interest in and to said 5-acre tract, and the rents, issues and royalties to be obtained from the operation thereof, in the proportion set out in the complaint. On December 20, 1923, Coseboom executed a grant deed conveying to the plaintiff title to said 1095/2500ths interest in said 5 acres, and a like interest in and to 24½ per cent of the lessors' interest in and to the rents and royalties accruing under the lease. This deed was executed in the office of the defendant bank, the acknowledgment being taken by the trust officer of the bank. The first moneys under the royalty belonging to the plaintiff were paid to the bank on the fifteenth day of December, 1923, in the sum of $657. Thereafter, payments continued to be made to the bank by the Shell Oil Company, and as the value of the oil belonging to the plaintiff, or her interest therein from time to time, in various sums aggregating in all $10,800, the first of these moneys referred to being received by the bank, as stated, on December 15, 1923, and the last sum on April 15, 1925. All of these moneys were received, as shown by the record, long after the garnishment served upon the defendant bank in the case of the suit of *House* v. *Cook* on April 6, 1923, at which time the

defendant had no moneys nor any property whatsoever in its possession belonging to Walter H. Cook. The money so received by the defendant was kept in its possession until on or about February 10, 1928, until after the determination of the action entitled "*House* v. *Cook*", in favor of the defendant. After this action was begun it appears from the record that it was not brought to trial until after the determination of the action of *House* v. *Cook* to which we have just referred.

On or about the ninth day of April, 1928, the defendant paid into court and deposited with the clerk thereof the sum of $10,800. This payment was made pursuant to the following order of the superior court, in which the action was pending: "It is now therefore ordered, adjudged and decreed that the Western Trust and Savings Bank deposit with L. E. Lampton, county clerk, the sum of $10,800.00, but that the said defendant, Western Trust and Savings Bank, shall not at this time be dismissed from said action nor discharged from all liability to the plaintiff or interveners, but that the liability, if any, over and above said sum of $10,800.00, shall be determined at the trial of the above entitled action."

The interveners referred to abandoned their complaints, and the question before the trial court was simply the amount of interest or damages to which the plaintiff was entitled.

The record which we have just set forth shows that the payment of $10,800 was not made under any theory that the defendant would be relieved from any existing liability to pay interest on account of having withheld from the plaintiff the various amounts received by it from time to time from the Shell Oil Company, for the uses and benefit of the plaintiff.

The first point made by the appellant in its objection to the allowance of interest is that recovery of interest is not sought by the complaint in this action. In making this contention the appellant draws a wrong inference from the plaintiff's pleadings in this action. The complaint, as originally filed, sets forth the amount of money to which the plaintiff claims to be entitled, and that demand has been made therefor, the refusal of the defendant, and concludes with the prayer that the defendant be required to

account for all moneys received from the Shell Oil Company, for a judgment fixing the amount of her interest therein, with interest thereon at 7 per cent per annum, and also for costs. The amount of the interest, of course, would be only a mere matter of calculation. The cases cited by the appellant in support of the contention that the pleadings do not put in issue the question of interest, do not sustain the appellant's contention.

In the case of *Parkford* v. *Union Drilling etc. Co.*, 118 Cal. 538 [5 Pac. (2d) 440], decided by this court, no reference is made to interest in any part of the pleadings. Further, it may be observed that the amount to be recovered was not a matter of mere calculation. The opinion in the Parkford case shows that it involved the value of supplies and work done in the drilling of an oil well to a considerable depth in excess of that specified in the written contract.

In the case of *Burks* v. *Weast,* 67 Cal. App. 745 [228 Pac. 541], decided by this court, the point decided was that in an action for the balance due for goods, wares and merchandise sold and delivered, the beginning of the suit constitutes a demand, and that interest allowed from an earlier date was erroneous.

In the instant case there is no controversy as to the date of the receipt of the different sums paid as royalty by the Shell Oil Company, which were apportioned to the interest in the property belonging to the plaintiff in this action. These various items became due and payable to the plaintiff immediately upon their receipt. The attachment referred to by the appellant and relied upon in argument, shows that no interest of the plaintiff was ever covered thereby, nor was any interest owned therein by any of the predecessors of the plaintiff covered by the garnishee process served upon the defendant.

"Where money or property belonging to another is not paid or turned over to the person entitled to receive it at the time it should be paid or turned over, interest is generally allowed for such wrongful withholding thereof". (33 C. J. 203; secs. 3287 and 3302, Civ. Code; *Chambers* v. *Security Commercial & Savings Bank,* 46 Cal. App. 32 [188 Pac. 818].)

It is further contended by the appellant that the court erred in allowing the plaintiff judgment for the sum

of $1368.80, for and on account of overcharges made by the defendant in receiving the money belonging to the plaintiff from the Shell Oil Company, and paying the same over to the plaintiff. The money was received by the defendant from the Shell Oil Company and disbursed by it by and under a certain power of attorney executed and delivered to it by C. W. Coseboom and Walter H. Cook. This power of attorney, among others, contained the following provisions: "The said party of the second part is hereby irrevocably authorized and directed to collect, accept, retain and receipt for, in the names of the parties of the first part (with full authority), to sell royalty oil taken in kind as provided in said lease with a reasonable compensation therefor, and to disburse the entire royalty to which the first parties may be entitled under said lease, in the manner following: To the registered owners and holders of deeds representing shares of undivided ownership in (property described), and in 24½% of the lessors' interest in the rents and royalties accruing under the lease hereinbefore described in proportion that each share of undivided ownership, as evidenced by such deeds, shall bear to the entire number of shares, amounting to 2500 undivided interests, less taxes which shall be chargeable against the interests of the respective owners in any funds in the hands of second party, and less collection charges of the party of the second part, on the basis herein provided; to C. W. Coseboom, or his assigns, 75½% of the lessors' interest in the rents and royalties accruing under that certain lease hereinbefore described. Party of the second part shall be entitled to deduct from the gross proceeds, as agent or attorney-in-fact, in the collecting and disbursing of said proceeds, in the manner as hereinbefore set forth, the charge of 15c on each check drawn by said attorney-in-fact."

Instead of charging the plaintiff in this action 15 cents for the drawing and delivery to her of each check covering the amount of the different installments belonging to her, received as royalty from the Shell Oil Company, the defendant proceeded to deduct the total amount of money that would be represented by a 15-cent charge for each payment made to the several owners of interests. In the instant case the record shows that there were 700 persons to whom checks should be issued. The appellant deducted,

as we have stated, the total amount of 15 cents on each check before making any apportionment of the moneys, and seeks to support such calculation by taking as example the sum of $800, which very nearly approximates some of the installments which should have been paid by the defendant to the plaintiff. Had each one of the 700 persons been an owner of an equal number of units, then the method of calculation adopted by the defendant would have been proper. However, such is not the case. An excessive charge was placed upon the plaintiff far in excess of the 15 cents for each check that should have been delivered to her. The illustration taking $800 as a basis, shows clearly the error of the defendant's calculation. With 700 checks at 15 cents a check, the total deduction would be $105, leaving a balance of $695 to be distributed. The plaintiff, being the owner of 1095/2500ths of the moneys to be distributed, would be entitled, upon apportionment, to the sum of $304.41. If, however, the apportionment had been made before the deduction of the $105, the plaintiff being the owner, as we have stated, would have been entitled to receive from the defendant the sum of $350.40, less 15-cent charge for the check. Thus, upon an apportionment where the royalty in the sum of $800 had been paid by the Shell Oil Company to the defendant, the defendant by its calculation wrongfully withheld from the plaintiff the sum of $45.84. In other words, the method adopted by the defendant in making its calculations required the plaintiff to pay almost one-half of the cost of the issuance of the checks. The court very properly charged the defendant with the amount of money so withheld. All of these items were capable of calculation and determination, and therefore, fall within the provisions of the Civil Code to which we have called attention.

The record shows that the plaintiff was at all times mentioned in the complaint the owner of, and entitled to the moneys that had been received by the defendant for and on account of the royalties referred to herein, and that the amounts were capable at all times of being ascertained by calculation.

The defendant urges also that the plaintiff is estopped from claiming any sums for and on account of the erroneous calculations referred to herein. We find nothing in the record, however, upon which to base an estoppel.

The language found in 12 California Jurisprudence, page 626, is applicable to the situation presented by the record in the instant case. Not a single thing presented by the record, required as shown by the text just referred to, appears either in the action, conduct or representations on the part of the plaintiff of, to or toward the defendant. The plaintiff did nothing to lead the defendant into its error in making its calculations. As soon as the plaintiff discovered the same, the defendant was notified but continued to make its erroneous calculations for several months thereafter. Under such circumstances, there can be no application of the principle of estoppel.

The defendant cites a number of cases, notably, *Peterson* v. *Chorley*, 103 Cal. App. 783 [284 Pac. 956], where it is held that "one who has received money for the use of another, and is charged merely with the duty of holding the same and paying it over to the proper person, is not, in the absence of an agreement, chargeable with interest, unless guilty of bad faith or unreasonable delay". These cases undoubtedly state the rule of law as applied to the circumstances of each particular case. Here, the testimony and the findings of the court are against the contentions of the defendant. A delay of many months after the money should have been paid over appears from the record, and consequently the defendant is justly chargeable with interest for the time it withheld the moneys from the plaintiff and retained the same for its own uses.

What we have said in relation to interest applies to all the smaller sums and items against which the defendant complains, and need not be specifically further dealt with herein.

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 18, 1934, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 17, 1934.