# O. E. BENELL, M. D. v. CITY OF VIRGINIA.

104 N. W. (2d) 633.

August 5, 1960—No. 37,842.

*Lewis, Hammer, Heaney, Weyl & Halverson,* for appellant.

*S. L. Cohen,* City Attorney, and *Hyman Edelman,* Special Assistant City Attorney, for respondent.

THOMAS GALLAGHER, JUSTICE.

Action by plaintiff, Dr. O. E. Benell, for a declaratory judgment that a resolution adopted June 3, 1957, by the hospital commission of the Virginia Municipal Hospital, which is owned by defendant, city of Virginia, is invalid. The resolution is as follows:

*"Any member of the active medical staff may be called in consultation by any other member of the hospital staff. The consultant will have access to all the hospital records affecting the patient in question, including laboratory reports, reports on tissues examined by the hospital Pathologist and X-rays taken under the supervision of the hospital Radiologist. After adequate examination of the patient and/or his hospital records, the consultant will enter his opinion on the hospital chart as to diagnosis and/or recommendations for treatment of the patient.*

*"The above would apply to the case of Dr. O. E. Benell. While Dr. Benell is a member of the active medical staff he may be called in consultation by another member of the staff. He may enter into the hospital charts his interpretation of X-rays taken under the supervision of the hospital Radiologist or he may be consulted for his opinion as to X-ray therapy for a patient. His opinion should be entered in the hospital chart.*

"In consultation with the hospital Radiologist, a decision may be made as to the *method of administration and dosage schedule for the X-ray therapy.* At the request of the attending physician, the hospital *Radiologist will then administer the X-ray therapy.*

"Dr. Benell thus exercises a function of the consultant in Radiology

by *interpreting X-rays* and recommending further *diagnostic X-ray techniques* or by making *recommendations in regard to X-ray therapy.* It is to be understood that no compensation is to be expected from the hospital for this consultation service." (Italics supplied.)

The trial court determined that since the resolution was for the promotion of higher standards of medical practice in the hospital; and for placing of responsibility for all radiological procedures with the radiologist heading the radiology department, it was reasonable and in all respects valid.

On appeal from the judgment entered pursuant to the trial court's order, plaintiff, a licensed physician and surgeon, and a qualified radiologist on the staff of the hospital, contends that the hospital, being a publicly supported institution, is required to make its equipment and the technical staff in its radiology department reasonably available to qualified radiologists on its active medical staff without the limitations and restrictions set forth in the resolution.

The Virginia Municipal Hospital is operated by the city of Virginia pursuant to the latter's home rule charter. It includes a well-equipped and modern department of radiology and a technical staff is maintained in connection therewith. It operates under a charter commission consisting of five lay freeholders and voters appointed by the mayor subject to the approval of the city council. The commission is empowered by the charter to make rules relating to its own procedures and the administration, maintenance, and control of the hospital.

Plaintiff has specialized in the practice of radiology since 1947. Since December 23, 1949, he has been a member of the Lenont-Peterson Clinic at Virginia. On January 9, 1950, he was hired as a radiologist for the Virginia Municipal Hospital to act on a part-time basis. Payments for his services were made to the Lenont-Peterson Clinic by the hospital. A resolution terminating this arrangement as of November 1, 1955, was adopted by the commission September 19, 1955. At that time it appointed Dr. Abraham Alpert as a full-time hospital radiologist, and on June 3, 1957, adopted the resolution here challenged. Prior thereto, it had offered plaintiff the opportunity of serving as radiologist for the hospital if he would disassociate himself

from the Lenont-Peterson Clinic and work out a suitable arrangement with Dr. Alpert. Plaintiff declined to disassociate himself from the clinic and thereafter requested that the hospital define his rights with respect to the radiology department, its staff, and equipment. The June 3, 1957, resolution followed this request, the commission giving as one of its reasons therefor its desire that the hospital radiology department be independent of any clinics and that its radiologist be responsible solely to the hospital.

At the trial, testimony of experts was submitted with reference to the reasonableness of the resolution. Mr. Ray M. Amberg, Director of the University of Minnesota Hospitals, called by defendant, testified that in his opinion the resolution was reasonable since the commission was vested with responsibility for selecting a radiologist for all hospital patients and since any negligence on his part might make the hospital liable in damages. Dr. Abraham Alpert, called by plaintiff for cross-examination under the statute, testified that in his opinion it was necessary for the hospital radiologist to take charge of all radiological procedures and to exercise his independent judgment when it was needed so diagnosis and treatment of all hospital patients could be obtained as expeditiously as possible. Dr. Arthur M. Antonow, a member of the East Range Clinic and chief of staff of the hospital, testified that in his opinion the resolution was reasonable because of the responsibility of the hospital for X-ray, diagnosis, and therapeutic treatment; because better and more uniform standards by the technicians could thereby be provided; and because better team work and greater efficiency would be promoted by closed staff arrangements for radiology.

Experts called by plaintiff included Dr. E. N. Peterson of the Lenont-Peterson Clinic and Dr. Henry G. Moehring, a radiologist with a Duluth clinic. Both expressed the opinion that the resolution was unreasonable; that it would hamstring visiting consultants in administering radiation therapy where daily judgment must be exercised. Dr. Peterson testified that it would deprive a consulting doctor of his right to examine his patients; that it would require diagnosis based upon another's findings; that it would deny the patient a free choice of physician and deny an

attending physician the right to proper evidence required for diagnosis. Dr. Moehring testified that the radiologist should be present at almost all examinations, even where simple chest films are taken; that if the radiologist can see films shortly after exposure, he may find reason to expose additional films or to suggest study along lines not apparent upon physical examination. Plaintiff testified that the resolution barred his practice of radiology at defendant hospital in that it is not satisfactory for a radiologist to be required to look at films taken by another radiologist. He was corroborated by Dr. Peterson and Dr. Moehring as well as by Dr. Alpert.

■ It is our opinion that the challenged resolution constitutes an administrative act adopted by the hospital commission pursuant to Charter of City of Virginia, § 200-C,[1] in furtherance of the administration, operation, maintenance, and control of the hospital, City of Duluth v. Cerveny, 218 Minn. 511, 16 N. W. (2d) 779, and that accordingly the function of this court is limited to a determination whether the commission's action in adopting the resolution was arbitrary or unreasonable. State ex rel. McGinnis v. Police Civil Service Comm. 253 Minn. 62, 91 N. W. (2d) 154; Nelson v. Reid and Wackman, 228 Minn. 137, 36 N. W. (2d) 544; State ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. (2d) 544. In determining this question, of course, we may not substitute our judgment for that of the commission on matters relative to policy or good practice, which are

---

[1]Section 200-C provides in part: "Generally the commission shall have charge of the administration, maintenance and control of all hospitals now or hereafter owned by the City of Virginia * * *. The commission shall have power * * * to make rules relating to its own procedure and to the administration, maintenance and control of such hospitals."

Section 200-D of the charter provides in part: "Subject to such limitations as may be prescribed by rules the Municipal Hospital shall be operated primarily as a general hospital, and the commission shall from time to time establish and provide for the collection of suitable charges for the use of the Municipal Hospital and its facilities. In fixing such charges and in all other business practices the commission shall have in mind this purpose: that the Municipal Hospital shall be self sustaining in so far as proper business practices can make it so."

purely administrative rather than legal in nature. State v. G. N. Ry. Co. 130 Minn. 57, 60, 153 N. W. 247, 248; Chicago, M. St. P. & P. R. Co. v. Foley Bros. Inc. 191 Minn. 335, 254 N. W. 435.

■ Basically, it is defendant's position that the resolution follows a practice adopted by most hospitals and advocated by the American College of Radiologists calculated to best serve the interests of hospitals, patients, and medical staffs generally.[2] Much other testimony was advanced in support of the reasonableness of the resolution, particularly as it related to the responsibility and liability of the hospital for negligence in connection with the operation of the equipment in its radiology department. Based upon all such factors, the trial court found that the conduct of the commission in adopting the resolution was not arbitrary or unreasonable, but purely administrative, and in furtherance of its endeavor to operate and maintain the hospital in an efficient manner.

Since there is ample evidence to sustain this finding, it must follow that even though this court might be of a contrary opinion as to what would be proper practice in the operation of hospital radiology departments, or in the administration of X-ray treatment and therapy, it would not be authorized to substitute its judgment in this respect. The question of good practice is purely administrative in nature and involves no legal principle. It would follow that the resolution challenged was in all respects reasonable and valid, and the trial court's judgment in this respect should be affirmed. See, Hayman v. City of Galveston, 273 U. S. 414, 47 S. Ct. 363, 71 L. ed. 714; Green v. City of St. Petersburg, 154 Fla. 339, 17 So. (2d) 517; Selden v. City of

---

[2] In his testimony, Dr. Moehring admitted that the views of the American College of Radiology were authoritatively expressed in its publication, *A Guide for Conduct of Radiologists in Relationships with Institutions* (1955), which states (p. 5): "The responsibility for all radiologic examinations and treatments in the hospital rests primarily on the radiologist who is head of the department. His findings and conclusions for all examinations should be communicated to the patient's physician and placed on the patient's chart. Nothing in this provision precludes additional study and interpretation by other qualified attending and consulting physicians on the staff."

Sterling, 316 Ill. App. 455, 45 N. E. (2d) 329; see, also, Hamilton County Hospital v. Andrews, 227 Ind. 217, 84 N. E. (2d) 469; Dade County v. Trombly (Fla. App.) 102 So. (2d) 394; Blackwell v. City of Pontiac (Mich. Cir. Ct.) No. C-29500, dated November 7, 1958.

■ Cases relied upon by plaintiff are distinguishable. Thus in Albert v. Gogebic County Public Hospital, 341 Mich. 344, 67 N. W. (2d) 244, the decision was based upon interpretation of Michigan statutes[3] —Comp. Laws of Michigan 1948, §§ 331.154, 331.160, 331.163— governing the operation of public hospitals, which the court held contained no authority for the adoption of rules and regulations limiting the practice of medicine or surgery in such hospitals. In Findlay v. Board of Supervisors, 72 Ariz. 58, 230 P. (2d) 526, 24 A. L. R. (2d) 841, the court held invalid a rule *requiring* one doctor on a staff to *assist* another staff doctor on the theory that it involved an attempt to control the relationship between doctors rather than the administration of hospital facilities. The court there directed attention to the "axiomatic" rule that licensed physicians have no constitutional right to practice in a hospital maintained by state or political subdivision (Hayman v. City of Galveston, 273 U. S. 414, 47 S. Ct. 363, 71 L. ed. 714) and approved the principle that municipalities may prescribe regulations for physicians *using hospital facilities,* citing Green v. City of St. Petersburg, *supra,* and Selden v. City of Sterling, *supra.*

In the dissenting opinion it is suggested that under the resolution as above quoted the hospital commission here has invaded the right of an individual, particularly a recipient of old-age benefits, to select his physician, as well as the right of the physician to treat his patient in a public hospital; and that thereunder the hospital will be engaged in the practice of medicine through employed physicians and surgeons.

---

[3]By virtue of Public Acts of Michigan 1958, No. 105, approved April 14, 1958, § 331.163 of the above statutes was amended so that hospital boards may now adopt rules governing the operation of hospitals and may define the rights of physicians and surgeons in treating patients in hospitals. A subsequent decision, Blackwell v. City of Pontiac (Mich. Cir. Ct.) No. C-29500, dated November 7, 1958, cited with approval Green v. City of St. Petersburg, 154 Fla. 339, 17 So. (2d) 517, in which the Florida Supreme Court arrived at the same result as we do here.

We do not so construe the language of the resolution. Rather, it means merely that, before an attending physician reaches a decision as to the method and dosage schedule for X-ray therapy, consultation with the hospital radiologist is required; and that the latter will administer the therapy, but only at the request of the attending physician. The final decision with reference to the need, mode, method, and dosage schedule for such therapy is left to the patient's physician.

Because of the nature of X-ray therapy and the technical equipment required therein, and the serious danger which may follow the incompetent administration thereof, most hospitals have adopted this procedure. A majority of physicians recognizing the advantages of special training in this field voluntarily refer their requirements therein to specialists with the necessary training, equipment, and facilities to achieve a safe and accurate result. The procedure outlined is but a phase of the steady advancement of specialization in various medical fields, designed to insure the safety of patients and to protect the hospital in the performance of its obligations to them. Nowhere does it violate the right of a patient—old-age pensioner or others—to select his own physician or compel the latter to yield to another's decision in the treatment of such patient. Nowhere does it deny a qualified physician or surgeon the right[4] to treat his patient in the hospital.

The judgment appealed from is, in all respects, affirmed.

FRANK T. GALLAGHER, JUSTICE (dissenting).

I cannot agree with the majority. It looks to me as though we are opening the door to a possible future situation wherein a municipal corporation could indirectly practice medicine by hiring its own doctors to operate a municipal hospital, particularly where such a hospital, as in the instant case, is the only one in the area served and admits public and private cases for medical and surgical care. To permit the Virginia hospital commission to accomplish this by its resolution of June 3, 1957, is in my opinion arbitrary, unreasonable, and not in accord with the laws of this state.

---

[4]As to whether this is a constitutional right, see Hayman v. City of Galveston, *supra;* Findlay v. Board of Supervisors, *supra.*

We have previously said in In re Disbarment of Otterness, 181 Minn. 254, 232 N. W. 318, 73 A. L. R. 1319, that a corporation cannot indirectly practice law by hiring a licensed attorney to practice for others for the benefit or profit of such hirer. In line with this same reasoning we said in Granger v. Adson, 190 Minn. 23, 250 N. W. 722, that we were just as firmly convinced that it is improper and contrary to statute and public policy for a corporation or layman to practice medicine in the same way.

In the case at bar the majority is holding that a hospital commission created by the charter of the city of Virginia and empowered to administer, maintain, and control a municipal hospital could place the department of radiology under a full-time radiologist, and adopt a resolution requiring that the use of equipment and technicians of such department by medical staff members be in consultation with and under supervision of the hospital radiologist. The majority is also holding, based on the findings of the trial court, that the action of the commission in adopting the resolution was not arbitrary or unreasonable, but was in furtherance of its obligation to operate and administer the hospital efficiently and economically and should be sustained.

An examination of the resolution shows that any member of the active medical staff may be called in consultation by any other member of the hospital staff. The consultant will have access to all the hospital records affecting the patient in question, including laboratory reports, reports on tissues examined by the hospital pathologist, and X-rays taken under the supervision of the hospital radiologist. It further provides that after adequate examination of the patient and/or his hospital records, the consultant will enter his opinion on the hospital chart as to diagnosis and/or recommendations for treatment of the patient.

The resolution also provides that the above requirements would apply to Dr. Benell, the appellant herein, and that while he is a member of the active medical staff he may be called in consultation by another member of the staff. It also permits him to enter into the hospital charts his interpretation of X-rays taken under the supervision of the hospital radiologist, or he may be consulted for his opinion as

to X-ray therapy for a patient, which opinion should be entered in the hospital chart.

Thus far the resolution may not be objectionable. However, we next come to this objectionable part, which reads:

"In consultation with the hospital Radiologist, a decision may be made as to the method of administration and dosage schedule for the X-ray therapy. At the request of the attending physician, the hospital Radiologist will then administer the X-ray therapy."

While that part of the resolution provides that a decision may be made as to the method of administration and dosage schedule for X-ray therapy, it does not provide who is to make that decision. Supposing the qualified member of an active medical staff has a patient in the hospital who is willing to pay his own way, and supposing his doctor disagrees with the hospital radiologist as to the administration and dosage schedule for X-ray therapy, who is to be the final one to determine the matter—the qualified doctor of the paying patient or the hospital radiologist?

The resolution then goes on to say that at the request of the attending physician the hospital radiologist will then administer X-ray therapy. Supposing the patient's doctor disagrees with the hospital radiologist as to dosage schedule for X-ray therapy, and will not request the hospital radiologist to administer X-ray therapy because of this disagreement, what will be the situation then?

In the case before us the record shows that the appellant is a specialist in radiology and is a member in good standing of the active staff of the Virginia Municipal Hospital. It further discloses, according to the supplemental record, that Dr. Benell was formerly the radiologist for the Virginia Municipal Hospital and was not displaced for any reason of incompetency but because he was and is associated with one of the clinic groups practicing medicine and surgery in Virginia. That record further shows that the Virginia hospital commission, prior to the adoption of the resolution complained of, did not object to the appellant working as a radiologist "on an independent basis" with the so-called hospital radiologist.

The majority opinion further goes on to say that the challenged

resolution constitutes an administrative act adopted by the hospital commission pursuant to Charter of City of Virginia, § 200-C, and accordingly the function of this court is limited to a determination whether the commission's action in adopting the resolution was arbitrary or unreasonable. In determining this question the majority opinion says we may not substitute our judgment for that of the commission on matters relative to policy or good practice, which are purely administrative rather than legal in nature.

I cannot agree with the latter statement that in matters of physical treatment so serious that the services of a radiologist are needed for the treatment of cancer or other critical conditions that it is a purely administrative matter rather than legal in nature. On the contrary it seems to me that a patient suffering from such a serious condition has some legal rights beyond merely administrative authority, and that if he is in a municipal hospital in a community where there is no other private hospital, and is such a patient who is willing to pay his own way, he should have the right to have his own selected physician to determine and administer dosage schedules for X-ray therapy if such a physician is a qualified radiologist as in the situation with Dr. Benell.

I realize that there is authority to the effect that a private hospital can make any regulations it chooses. Natale v. Sisters of Mercy, 243 Iowa 582, 52 N. W. (2d) 701. However, I do not think such a rule should apply where the defendant, as here, operates a public hospital. If we are to say at this time that a rule requiring a hospital radiologist to administer the dosage schedule for X-ray therapy is a reasonable one, what is to prevent an attempt to extend this rule to surgery and other types of treatment in any public hospital. In other words, supposing at some future time a municipal hospital was to attempt to employ its own qualified surgeon for particular types of operations to be performed in the institution, can it be said that even after consultation with the patient's individual doctor such a patient would have to submit to an operation by a doctor selected by the hospital? If such a condition could be developed in the future, we can well anticipate a type of socialized medicine and hospitalization practice furnished by municipal bodies, a situation which to this writer would seem very undesirable.

In the opinion of this writer, the resolution adopted by the Virginia hospital commission is invalid in so far as it attempts to deprive a patient in that hospital of his free choice of a physician or surgeon when such a doctor selected by the patient is a member in good standing of the medical staff of that hospital and fully qualified, as the record discloses here, to make X-ray examinations and administer X-ray treatments.

It is my further opinion that the resolution referred to herein is contrary to the laws of this state with reference to medical and surgical care for recipients of old-age assistance. Our legislature appears to have carefully guarded the rights of a person receiving old-age assistance to be attended by a doctor of his own choice. See, M. S. A. 256.12, subd. 18. In that section "Vendor of medical care" is defined. It covers medical, surgical, hospital, optical, dental, nursing services, drugs and medical supplies, appliances, *laboratory, diagnostic and therapeutic services,* etc.

That section further provides that the commissioner of public welfare may adopt rules and regulations provided "that such rules and regulations shall not deprive the recipient of free choice of vendor nor deprive the vendor of payment on a fee for service or supply basis."

It seems clear to me that it is the intent of the law that a recipient of such form of public relief has a right to be treated by a doctor of his own choice. Surely a resident of the Virginia community, or any similar community in this state, who pays for his hospitalization and medical care has a natural right to be attended by a doctor of his own choice when the doctor so selected is a member in good standing of the medical staff of the Virginia Municipal Hospital, or a similar hospital. To that extent I believe that the resolution adopted is arbitrary, unreasonable, and not in accord with the laws of this state.

The question before the court in the instant case is an important one from the standpoint of the public. In many communities in this state there is only one hospital serving public and private patients alike. It, therefore, does not appear to me that a hospital commission, or hospital board, operating such a public hospital should be able by resolution to deprive the patient of the right to be attended by a doctor

of medicine of his own choice, when such doctor is duly licensed and is admittedly a competent and qualified member of the medical staff of such a hospital.

The question is also important to doctors of medicine who have given their time and money to become qualified and competent in the various specialities in medicine. One who has done so, and who has been admitted to the medical staff of a hospital, ought not to have his privilege nullified, as has been attempted in this case. The question is not one of a doctor seeking admission to the staff of a hospital.

Although the writer of this dissent was not present at the oral argument, this case has been submitted to him on the record and briefs as provided for under Supreme Court Rule XIII (222 Minn. xxxvi), which provides in part as follows: "Whenever any member of the court is not present at the oral argument of a case, such case shall be deemed submitted to such member of the court on the record and briefs therein and when during the consideration of a case there is a change in the personnel of the court the case shall be deemed submitted to the new member or members on the record and briefs."