526 P.2d 676 (1974)
AI R. THREADGILL, Plaintiff-Appellee,
v.
PEABODY COAL COMPANY, Defendant-Appellant.
No. 73-304.
Colorado Court of Appeals, Div. I.
July 9, 1974.
Rehearing Denied August 7, 1974.
*677 Graham, Webster & Wise, Hugh D. Wise, George S. Graham, Grand Junction, for plaintiff-appellee.
Dufford, Williams & Milburn, D. J. Dufford, Grand Junction, for defendant-appellant.
Selected for Official Publication.
PIERCE, Judge.
Defendant, Peabody Coal Company (Peabody), appeals from a judgment holding it liable for damages for the loss of certain equipment owned by the plaintiff which was lost in the process of probing test holes drilled by Peabody. Plaintiff was an independent contractor hired by Peabody to prove the test holes for the purpose of locating coal deposits. After the test holes were sunk to the appropriate depth by Peabody, plaintiff's employees lowered a probing device to the bottom of each hole and proceeded to "log" the hole as the probe was retrieved. "Logging" consists of gathering soil samples and other data. During the probing of one of the test holes by the employees of the plaintiff, the proving device became stuck in the hole. Employees of Peabody then commenced recovery operations which were unsuccessful.
Plaintiff's complaint alleged two claims for relief: (1) that the loss of the probe was due to defendant's negligence in attempting to recover the probe, and (2) that the defendant was obligated under a contract between the parties to pay the value of any equipment owned by the plaintiff lost in the course of the probing operation. Defendant filed an answer containing several defenses and pleaded a counterclaim for expenses incurred in the recovery attempt based on the alleged negligence of plaintiff's employees.
Upon trial to the court, the court found that an oral contract for the services of the plaintiff did exist, but that there had been no express agreement, oral or otherwise, upon the placement of the risk of loss of the probing device. The court then found that the plaintiff had satisfactorily established "a certain practice or custom in the drilling industry which places the risk of probe loss on the driller (here the defendant) where, as here, there is no agreement otherwise." Furthermore, the court found that Peabody's employees had not been negligent in conducting the recovery operation but made no finding as to any negligence on the part of the plaintiff, or his employees. However, the court ruled that the negligence was immaterial under the trade practice, and thus, in effect, placed a duty of strict liability upon Peabody. The court then entered judgment in favor of the plaintiff and dismissed Peabody's counterclaim.

I
Peabody's first allegation of error is that the evidence is not sufficient to support the trial court's finding that a custom or trade usage existed that was binding on defendant.
In order to bind a party by a usage in the trade, it must be shown either that the party had actual knowledge of the existence of the trade usage or that the usage is so well established as to justify a finding of constructive knowledge. Lorraine Mfg. Co. v. Allen Mfg. Co., 77 Colo. 156, 234 P. 1055; 5 S. Williston, Contracts § 661 (3d ed. W. Jaeger). The issue of knowledge of the trade usage, whether actual or constructive, is generally a question to be decided by the trier of fact. Nicoll v. Pittsvein Coal Co., 269 F. 968 (2d Cir.); 5 S. Williston, Contracts § 662 (3d ed. W. *678 Jaeger). Peabody's representatives testified that they had no knowledge of the alleged custom, and Peabody argues that, to show constructive knowledge, the custom or usage must be demonstrated to be "universal" and "notorious." Such terms have been used where the evidence was insufficient to support a finding that the alleged custom even existed. See, e. g., Lorraine Mfg. Co. v. Allen Mfg. Co., supra. However, these requirements are only applicable to the English law of custom by which accepted practices have developed into substantive rules of law. They do not apply to a trade usage which is offered only as evidence as to the intent of the parties. See 5 S. Williston, Contracts § 649 (3d ed. W. Jaeger); Comment, Custom and Trade Usage: Its Application to Commercial Dealings and the Common Law, 55 Colum. L.Rev. 1192.
The proper test applicable to this issue is stated in the more recent case of Ryan v. Fitzpatrick Drilling Co., 139 Colo. 471, 342 P.2d 1040. That is, to be binding upon a party, a trade usage must be "sufficiently general so that the parties could be said to have contracted with reference to it." See Lorraine Mfg. Co. v. Allen Mfg. Co., supra.[1]
Although contradicted on some points by Peabody's evidence, each of the plaintiff's witnesses testified as to his experience in the trade within the geographical locale of the instant operation and to the existence, within that locale, of the alleged trade usage. These witnesses further explained the usage by pointing out that the driller has primary control over the drilling of the hole and that since the prober has no connection with the operation until he begins the "logging" process, he must rely on the driller's judgment as to the readiness of the hole to receive the probe. Furthermore, once a probe becomes lodged in the hole, the prober must rely on the driller's equipment for recovery operations. The testimony of these witnesses also indicated that the loss of equipment was generally considered to be a cost to the owner of the land being probed; in this case, Peabody.
Finally, as pointed out by the trial court, the actions of the parties with regard to the recovery operation were consistent with the alleged usage. Such actions tending to demonstrate the intent of the parties are proper considerations for the fact finder. Deeb v. Canniff, 29 Colo. App. 510, 488 P.2d 93.
We hold that the evidence produced at trial was sufficient to support a finding of a general trade usage which permitted the inference that the parties must have contracted with reference to it.
Peabody also argues, however, that the evidence failed to establish that the alleged trade usage was sufficiently certain to permit its application to the facts before the court. It cites testimony to the effect that, in some cases, the driller is obligated only to provide a certain number of "rig hours" for the purpose of recovering lost tools and that the obligation of the driller does not extend to liability for the value of unrecoverable tools. However, this testimony referred to cases in which the parties expressly agreed with respect to the obligations of the parties regarding the loss of the contractor's tools. Other witnesses testified that in the majority of logging jobs, as was the case here, no written agreement is actually entered into by the parties. Furthermore, the alleged trade usage which plaintiff sought to establish, and which the trial court found, provided a rule in cases in which no express agreement was reached by the parties.
The evidence in the record was sufficient to support the finding of the trial *679 court that, in the absence of other factors, the trade usage would place on the driller the responsibility for the loss of the probing device in addition to the cost of the recovery attempt. That finding will not be disturbed upon review.

II
Peabody, however, also asserts that even though the trial court found the trade usage, the issue of plaintiff's negligence is not removed from the case. We agree with this contention.
In order for a trade custom or usage to be binding upon a person who has not expressly agreed to be bound by it, it must be reasonable. Alden Sign Co. v. Roblee, 121 Colo. 432, 217 P.2d 867; 5 S. Williston, Contracts §§ 658, 659 (3d ed. W. Jaeger). This requirement in the law of trade usage generally specifies only that the usage not be illegal or in violation of public policy. 5 S. Williston, Contracts § 658 (3d ed. W. Jaeger).
The public policy of our state dictates that, generally, parties cannot contract away their potential liability for their own negligence. See, e. g., French v. Bekins Moving & Storage Co., 118 Colo. 424, 195 P.2d 968; Denver Union Terminal Ry. v. Cullinan, 72 Colo. 248, 210 P. 602; Parris v. Jaquith, 70 Colo. 63, 197 P. 750; Denver Consolidated Electric Co. v. Lawrence, 31 Colo. 301, 73 P. 39. If, under most circumstances, one cannot by express contract, immunize himself from the consequences of his own negligence, then an implied agreement to that effect arising out of a general custom or trade usage will not be given effect. See King v. Gannon, 261 Mass. 94, 158 N.E. 346, 54 A.L.R. 1215. Only where such agreement is entered into by parties of equal bargaining power and where the agreement is express and unequivocal, have such clauses been held enforceable. See Mohawk Drilling Co. v. McCullough Tool Co., 271 F.2d 627 (10th Cir.). See also Tyler v. Dowell, Inc., 10th Cir., 274 F.2d 890, cert. denied, 363 U.S. 812, 80 S.Ct. 1248, 4 L.Ed.2d 1153; M. J. Delaney Co. v. Murchison, 393 S.W.2d 705 (Tex.Civ.App.). Here, there is no evidence in the record of such circumstances and the trial court erred in ruling that the trade usage applied regardless of the negligence of the parties. To the extent that the trade usage before us purports to relieve the contractor of the consequences of his own negligence, it is in conflict with the express public policy of this state.
Therefore, we hold that the findings of the trial court regarding the existence and generality of a trade usage placing the risk of loss upon the driller or owner in the absence of an express agreement are affirmed. The finding that negligence was made irrelevant by such usage is rejected, as a matter of law, and the case is remanded for further proceedings not inconsistent with this opinion.
COYTE and SMITH, JJ., concur.
Judgment affirmed in part, reversed in part, and cause remanded with directions.
NOTES
[1] While the Uniform Commercial Code does not govern this case, we think it significant to note that the drafters of the Code in defining a trade usage have adopted a similar standard focusing on the likelihood that the parties contracted with reference to the usage. See Uniform Commercial Code § 1-205(2) (C.R.S.1963, XXX-X-XXX(2). They have also rejected the "universal" and "notorious" language. Uniform Commercial Code § 1-205 (2) (Comment 5).