## No. C-1235

**Radiology Professional Corporation, a Colorado corporation v. Trinidad Area Health Association, Inc., a Colorado non-profit corporation, Stanley H. Biber, Gloria Skufca, Hanns Schwyzer and Guidbaldo Jiminez**

(577 P.2d 748)

Decided April 17, 1978. Rehearing denied May 8, 1978.

254

Pendleton, Sabian & Landeck, P.C., Alan C. Friedberg, for petitioner.

Saunders, Snyder, Ross & Dickson, P.C., Wayne J. Fowler, for respondents.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

Petitioner, Radiology Professional Corporation, brought this action against the respondents, the Trinidad Area Health Association and four individually named physicians, alleging breach of contract and tortious interference with contract. Trial to a jury resulted in a verdict in the petitioner's favor on both claims. The court of appeals reversed in *Radiology Professional Corporation v. Trinidad Area Health Association,* 39 Colo. App. 100, 565 P.2d 952 (1977). We affirm the result reached by the court of appeals but for different reasons.

On March 15, 1973, the petitioner and the respondent association executed a "Professional Services Agreement — Radiology" (hereinafter agreement) for the petitioner to provide radiology services to a hospital owned and operated by the association. The agreement in part provided:
"3. PROFESSIONAL SERVICES. One of the licensed physicians employed by the Corporation, subject to the approval of the Hospital, shall be appointed by the Hospital as Director of the Hospital's Radiology Department. The Corporation, acting through its licensed physicians, shall furnish to the Hospital all radiology services which it may require during the term of this Agreement, such directorship and services to include the following:
"(a) Administering, supervising, and operating the Radiology Department.
"(b) Providing radiology services to the in or out-patients of the Hospital's Medical Staff upon request by any member of the Medical Staff.
. . . .
"5. COMPENSATION. The Corporation shall receive as compensation for such services a sum equal to 40% of the gross billings by the Hospital to patients for services rendered by the Corporation. . . ."
The contract was of a continuing nature and was terminable by either party upon 180 days' written notice.

Dr. Samo J. Dovgan, an employee of the petitioner, was appointed director of the hospital's radiology department pursuant to the agreement in April, 1973. Over the next nine months, all staff requests for radiology services were directed to and performed by the petitioner. In December, 1973, however, a dispute between two groups within the hospital resulted

in the issuance of a standing order by the respondent physicians that two radiologists not associated with the petitioner would perform future radiology services for their patients. The hospital administrator issued a memorandum in conjunction with the physicians' order stating that the petitioner was not to receive compensation for services rendered by radiologists other than its own employees.

The number of staff requests for radiology services submitted to the petitioner, and the petitioner's income declined substantially after the new radiologists entered the hospital. In a letter dated December 19, 1973, the petitioner asserted that the agreement granted it an exclusive right to provide all hospital radiology services and demanded an assurance that the agreement would be honored. No assurance was forthcoming, and the petitioner ceased providing services to the hospital on January 4, 1974.

Three issues are presented on appeal: (1) Did the radiology service agreement establish an exclusive right in the petitioner to provide all radiology services required by the hospital and its staff? (2) Did the respondent physicians tortiously interfere with the petitioner's agreement? (3) Do the staff physicians of a hospital possess the absolute right to refer their patients to specialists of their own choice if the hospital has entered into an exclusive medical service contract for such services?

## I.

The agreement in this case must be examined in the light of well-established principles of contract law. One such principle is that the intent of the parties to a contract is to be determined primarily from the language of the instrument itself. Extraneous evidence is only admissible to prove intent where there is an ambiguity in the terms of the contract. *McNichols v. City and County of Denver,* 120 Colo. 380, 209 P.2d 910 (1949). Written contracts which are complete, clear in their terms, and free from ambiguity are enforced because they express the intention of the parties. *American Mining Co. v. Himrod-Kimball Mines Co.,* 124 Colo. 186, 235 P.2d 804 (1951). Where the evidence of agreement consists of documents, as in this case, the law is clear that the determination of their effect is a matter of law. *Sentinel Acceptance Corp. v. Colgate,* 162 Colo. 64, 424 P.2d 380 (1967); *Radke v. Union Pacific Railroad Co.,* 138 Colo. 189, 334 P.2d 1077 (1958); *Van Diest v. Towle,* 116 Colo. 204, 179 P.2d 984 (1947).

In ascertaining whether certain provisions of a document are ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words employed, and reference must be made to all the provisions of the agreement. *Christmas v. Cooley,* 158 Colo. 297, 406 P.2d 333 (1965); *United States Fidelity & Guaranty Co. v. First National Bank of Fort Morgan,* 147 Colo. 446, 364 P.2d 202 (1961); *People v. Hinderleider,* 98 Colo. 505, 57 P.2d 894 (1936). The mere fact that there is a difference

of opinion between the parties regarding the interpretation of an instrument does not of itself create an ambiguity. *Brunton v. International Trust Co.,* 114 Colo. 298, 164 P.2d 472 (1945).

■ Close scrutiny of the agreement in this case and application of the above-stated principles causes us to conclude that no ambiguity or uncertainty exists. The clear intent of the parties, as evidenced by the four corners of the written document, was that the petitioner upon request would provide the hospital and its staff with radiology services in exchange for the hospital's provision of space, equipment, supplies, and accounting services. The agreement, contrary to the petitioner's contention, does not impose a duty upon the association to have all requirements of the hospital for radiology service satisfied by the petitioner.

The provisions of paragraph 3 of the agreement, relied upon by the petitioner, merely sets forth the petitioner's duty to provide radiology services. Provision 3(b) specifically requires that the petitioner provide services upon the request of any staff member, but does not place a reciprocal duty upon the staff to limit their referrals to the petitioner. The nonexclusive nature of the agreement is further emphasized by paragraph 5 of the agreement which provides that the association must compensate the petitioner only for radiology services rendered by the petitioner. No provision mandating referral of all patients requiring radiology services to the petitioner or requiring that the petitioner be paid for all radiological services performed in the hospital exists in the agreement.

■ Adoption of the construction and interpretation advanced by the petitioner would cause the court to impermissibly rewrite the parties' agreement, *Yamin v. Levine,* 120 Colo. 35, 206 P.2d 596 (1949); *Hyland Hills Metropolitan Park & Recreational District v. McCoy Enterprises,* 38 Colo. App. 23, 554 P.2d 708 (1976), and compel a party to fulfill a duty for which he did not contract. *Bowman v. Reyburn,* 115 Colo. 82, 170 P.2d 271 (1946). Courts possess no authority to rewrite contracts and must enforce unambiguous contracts in accordance with their terms. *Yamin v. Levine, supra.*

II.

■ The petitioner cannot recover for the alleged tortious interference with a contract because the agreement was nonexclusive in nature and had not been breached. *See Control,Inc. v. Mountain States Telephone & Telegraph Co.,* 32 Colo. App. 384, 513 P.2d 1082 (1973). Since the petitioner did not possess the exclusive right to perform all radiology services at the association's hospital, the respondent physicians were free to refer their patients to other radiologists for consultation.

III.

■ The ability of a physician to exercise his professional judgment in the diagnosis and care of his patients is well-established and should be protected against unreasonable interference. When professional

258

consultation is desirable or necessary, the physician should be permitted to determine who should be consulted in the best interest of his patient's health. The court of appeals, aware of these important considerations, held that physicians have an absolute right, absent contractual limitation, regarding professional consultation. We do not agree with the court of appeals' analysis entirely.

 The physician's right may be contractually limited or waived by physicians who are associated with hospitals or clinics. Various services traditionally provided by specialists operating hospital specialty departments may be difficult to obtain on a regular basis unless the hospital enters into an exclusive contract. Contracts which limit the use of a hospital's facilities to certain specialists or which provide that all services of a particular type required by hospital patients be performed by the contracting specialists have been upheld by courts which have considered their validity. *Dattilo v. Tucson General Hospital,* 23 Ariz.App. 392, 533 P.2d 700 (1975); *Adler v. Montefiore Hospital Association of Western Pennsylvania,* 453 Pa. 60, 311 A.2d 634 (1973), *cert denied,* 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974); *Letsch v. Northern San Diego County Hospital District,* 246 Cal.App.2d 673, 55 Cal.Rptr. 118 (1966); *Blank v. Palo Alto-Stanford Hospital Center,* 234 Cal.App.2d 377, 44 Cal.Rptr. 572 (1965); *Benell v. City of Virginia,* 258 Minn. 559, 104 N.W.2d 633 (1960).

None of the above-cited cases have held that a physician's right to select professional consultants for his patients is unreasonably limited by exclusive service contracts. Practical considerations of hospital operation permit hospital administrators to conclude that specialty services can best be provided by entering into exclusive medical service contracts. The physician's right relating to professional consultation is, in this context, subject to reasonable limitation or waiver.

Accordingly, the judgment is affirmed.

MR. JUSTICE KELLEY and MR. JUSTICE CARRIGAN dissent.

MR. JUSTICE CARRIGAN dissenting:

I respectfully dissent.

The contract at issue here contains conflicting clauses which in my view cannot be reconciled without considering parole evidence. After providing that the petitioner is to "furnish to the Hospital *all radiology services which it may require* during that term of this Agreement," the contract goes on to state that such services are to include "radiology services to the in or out-patients of the Hospital's Medical Staff *upon request* by any member of the Medical Staff." (Emphasis added.) It is impossible to determine, solely from the contract language, whether the parties

intended the contract to be exclusive or subject to each staff doctor's discretionary choice of radiologists. If, as the majority opinion recognizes, a physician's right to select professional consultants for his patients may be limited by an exclusive service contract, either construction would be reasonable.

Given this ambiguity in the contract's language, the trial court properly received extrinsic evidence for the purpose of determining the parties' intent. *Ryan v. Fitzpatrick Drilling Co., Inc.,* 139 Colo. 471, 342 P.2d 1040 (1959). Determination of that intent in light of the evidence then became a question of fact for the jury. *Metropolitan Paving Co. v. City of Aurora,* 449 F.2d 177 (10th Cir. 1971); *Halsey v. Darling,* 13 Colo. 1, 21 P. 913 (1889). *See also Cosper v. Hancock,* 163 Colo. 263, 430 P.2d 80 (1967). The record clearly reflects that ample evidence was presented to support the jury's conclusion that an exclusive contract was in fact intended. Therefore, I would reverse the court of appeals and reinstate the jury's verdict.

MR. JUSTICE KELLEY authorizes me to state that he joins in this dissent.