WILLIAM B. TANNER COMPANY, INC., Plaintiff,

v.

MESA BROADCASTING COMPANY, d/b/a Radio Station KQIL (formerly known as KWSL), Defendant.

Civ. A. No. 81–Z–803.

United States District Court, D. Colorado.

Jan. 13, 1983.

Philip Coebergh, Prakken & Marquez, Grand Junction, Colo., for plaintiff.

James S. Casebolt, Younge & Hockensmith, P.C., Grand Junction, Colo., for defendant.

ORDER RULING ON MOTIONS FOR SUMMARY JUDGMENT

WEINSHIENK, District Judge.

This matter is before the Court on cross motions for summary judgment. Jurisdiction is based on diversity. 28 U.S.C. § 1332. Plaintiff seeks to collect allegedly unpaid balances on six of its contracts with defendant.

Plaintiff produces and markets audio promotional packages for use by local radio stations. On two 1974 contracts and one 1975 contract, it claims unpaid cash balances. On its contracts with defendant Mesa dated 1965, 1966, and 1967, the al-

legedly unpaid balances consist of unused 60 second units of air time called "spots." The parties have stipulated that a number of spots were run for the plaintiff during the 1966–74 period and that an additional 48 spots were run during 1978.

The cross motions involve interpretation of language used in the parties' 1965, 1966, and 1967 contracts:

> These spots are preemptable, and since they are considered partial payment for service(s) received, they are to be valid until used.

The issues are (1) Whether this language is so ambiguous as to time that it requires an implication that it is limited to the contract period or to a reasonable period, and (2) Whether Colorado's six year statute of limitations for contracts, C.R.S. 1973, as amended, § 13–80–110, bars this action.

The first issue was before the 10th Circuit in *William B. Tanner Company v. Plains Broadcasting Company,* No. 80–1408 (10th Cir. filed Feb. 23, 1983). In that unpublished opinion, the Court of Appeals did not consider the issue in light of the strong policies of Colorado contract law discussed below. Furthermore, paragraph 8 of the *Plains* contract, which the 10th Circuit found contradictory to the "valid until used" language, quoted above, is not present in any of the three contracts before this Court.

■ Intent at the time of contracting is controlling. "[T]he intent of the parties to a contract is to be determined primarily from the language of the instrument itself." *Radiology Prof. Corp. v. Trinidad Area Health,* 195 Colo. 253, 577 P.2d 748, 750 (1978). In the contract language quoted above, the words "These spots are preemptable" means that either the defendant station or its other advertisers could bump Tanner's spots. The segment "and since they are considered partial payment for service(s) rendered" means that the spots were compensation or consideration for Tanner's performance. Finally, "they are to be valid until used" means that the supply is available for Tanner's use until exhausted.

■ Since the spots were partial compensation for Tanner's performance, deprivation of these spots would be a forfeiture of part of its consideration. In Colorado, "forfeitures are not favored in the law, and to be effectual, must be clear and unequivocal . . . ." *Montgomery Ward & Company v. Reich,* 131 Colo. 407, 282 P.2d 1091, 1093 (1955). None of the contracts in question states that spots not used are to be forfeited; each says the spots are "valid until used."

■ Even if this language were not clear, "the conduct of the parties is given great weight in construing it." *Hensel Phelps Const. Co. v. United States,* 413 F.2d 701, 703 (10th Cir.1969). Defendant Mesa Broadcasting continued to honor the occasional spot requests of Tanner long after the contract terms had expired.

■ Because of these policy considerations under Colorado contract law, this Court concludes that Tanner has a right to compensation for the unused spots. Whether that right is enforceable involves the issue of when Colorado's six year statute of limitations began to run. *See* C.R.S. 1973, as amended, § 13–80–110. The parties agree that spots were run pursuant to these contracts during the 1966–74 period and that there is a balance of 3,447 unused spots. An additional 48 spots were run in August, 1978, half of these after John W. Hagerman of Tanner notified James Ter-Louw of Mesa Broadcasting by letter dated August 16, 1978, that Tanner ordered the 48 spots against the balance still due it under the subject contracts. By continuing to run the spots with knowledge that Tanner was asserting its rights under the contracts, Mesa Broadcasting acknowledged the existence of those rights. When Mesa Broadcasting's owner, John W. Hough, notified Keith A. Lee of Tanner by letter dated November 6, 1978, that Mesa Broadcasting no longer recognized Tanner's rights under the three contracts signed in the 1960's, the statute of limitations period began to run. Since this Complaint was filed during 1981, it is within the correct time period.

The exact amount of damages is still at issue. Plaintiff Tanner has supplied a copy of the "appropriate page from Standard Rate and Data Service (SRDS)" indicating that the published rate for spots was $6.00 each at the time the Complaint was filed. It also supplied copies of the defendant's "Affidavits of Performance, dated September 30, 1978," which indicate that the rate at the approximate time of breach was $5.00 per spot. The Court has no information before it concerning the price of spots at the time of contracting. Accordingly, it is

ORDERED that defendant's Motion for Partial Summary Judgment is denied. It is

FURTHER ORDERED that plaintiff's Cross-Motion for Summary Judgment is granted to the extent that defendant is liable to plaintiff for the unused spots in an amount to be determined. The Court will encourage the parties to attempt to settle the damage issue in an amicable manner. If this cannot be done, the matter will be set for hearing on damages at the earliest available date.